GARY WALLACE and RED ROOF INNS, INC. v. TOWN OF CHAPEL HILL

No. 8815SC576

(Filed 18 April 1989)

1. **Municipal Corporations § 2.2 — annexation — property developed for urban purposes — different tests for subareas**

    A town could qualify three distinct noncontiguous subareas of an area to be annexed as property "developed for urban purposes" within the meaning of N.C.G.S. § 160A-48(c) by using a different urban purpose test set forth in subsections (1)-(3) of that statute for each subarea.

2. **Municipal Corporations § 2.3 — annexation — extension of water service**

    The trial court did not err in concluding that a town substantially complied with the provision of N.C.G.S. § 160A-47 pertaining to the extension of water service to an annexed area, although petitioners were required to pay the costs of a twelve-inch water line extension to their property, where petitioners offered no evidence that the twelve-inch extension was a major trunk water main, and the evidence showed that the policy requiring petitioners to pay for the cost of the water line extension to their property was consistent with the policy of water line extensions within the preexisting town limits.

3. **Municipal Corporations § 2.3 — annexation — services by water and sewer authority**

    A town did not violate N.C.G.S. § 160A-47 provisions pertaining to the extension of water and sewer services to an annexed area because such services were provided by a water and sewer authority rather than by the town.

4. **Municipal Corporations § 2.3 — annexation — nonurban areas — necessary land connection not required**

    A municipality could annex nonurban property if it met the criteria set forth in N.C.G.S. § 160A-48(d)(1) or (2), and it was not necessary for the municipality also to show that the nonurban area constitutes a necessary land connection between the municipality and an area developed for urban purposes or between two or more areas developed for urban purposes.

APPEAL by petitioners from *Brannon (Anthony M.), Judge.* Judgment entered 31 December 1987 in Superior Court, ORANGE County. Heard in the Court of Appeals 9 December 1988.

*Michael B. Brough & Associates, by Michael B. Brough and Robert E. Hagemann, for petitioner-appellants.*

*Haywood, Denny, Miller, Johnson, Sessoms & Patrick, by Michael W. Patrick, and Ralph D. Karpinos, for respondent-appellee.*

GREENE, Judge.

Pursuant to N.C.G.S. Sec. 160A-50(a) (1987), petitioners filed a petition in superior court requesting review of an annexation ordinance adopted by the Town of Chapel Hill (Town), which ordinance annexed properties of the petitioners. The superior court affirmed the action of the Town, and petitioners pursuant to N.C.G.S. Sec. 160A-50(h) (1987) appeal.

On 14 July 1986, the Town, a municipality with a population exceeding 5,000, adopted an ordinance extending the corporate limits of the Town of Chapel Hill. The area annexed included among other lands a four-acre tract of land owned by the petitioners and three subareas which were identified by the Town as urban areas under N.C.G.S. Sec. 160A-48(c) (1987). The three subareas, Eastowne, Lakeview and a 149.2-acre tract, are not contiguous with each other, while two of the areas are contiguous to the pre-existing town boundary of Chapel Hill. The remainder of the area annexed, including the petitioners' property, lies outside the three subareas claimed by the Town to be urban and was annexed pursuant to N.C.G.S. Sec. 160A-48(d) (1987) as a non-urban area.

The superior court entered the following pertinent findings of fact which have not been excepted to by the petitioners:

20. In preparing the annexation report and enacting the Ordinance, the Town studied and qualified each urban subarea . . . as a whole.

. . . .

26. The Eastowne subarea as defined within the report is developed for urban purposes and meets the standards of . . . N.C.G.S. Sec. 160A-48(c)(3) . . . .

. . . .

34. The Lakeview area is also developed for urban purposes using the standards of . . . N.C.G.S. Sec. 160A-(c)(1) . . . .

. . . .

38. The 149.2-acre tract of land as defined within the report is developed for urban purposes and meets the standards of . . . N.C.G.S. Sec. 160A-(c)(2) . . . .

The trial court entered the following pertinent conclusions of law which were excepted to by the petitioners:

3. The Town of Chapel Hill has substantially complied with the requirements of N.C.G.S. Sec. 160A-48 in determining that Area 1986-C [the total annexed area] is an area eligible for annexation; the standards of N.C.G.S. Sec. 160A-48(c) have been met by the three urban subareas in Area 1986-C;

. . . .

5. The Town of Chapel Hill has substantially complied with the requirements of N.C.G.S. Sec. 160A-48(d) in determining that the nonurban portion of Area 1986-C [the total annexed area] falls within the definition of that section by the General Statutes and qualifies for annexation.

6. The Town of Chapel Hill has substantially complied with all the relevant provisions in N.C.G.S. Sec. 160A-47 and Sec. 160A-49.

. . . .

9. The Petitioners have failed to show a failure on the part of the municipality to substantially comply with any provision of N.C.G.S. Sec. 160A-45 through Sec. 160A-56. The Petitioners have failed to show any irregularity in the proceedings which would materially prejudice the substantive rights of the Petitioners.

. . . .

11. The action of the Town Council of the Town of Chapel Hill in adopting annexation ordinance on the 14th day of July, 1986 should be affirmed.

As annexation proceedings are presumed regular, *In re Annexation Ordinance*, 304 N.C. 549, 551, 284 S.E. 2d 470, 472 (1981), the burden of proof is on the petitioners to "show by competent

and substantial evidence that the statutory requirements were in fact not met or that procedural irregularities occurred which materially prejudiced their substantive rights." *Huyck Corp. v. Town of Wake Forest*, 86 N.C. App. 13, 15, 356 S.E. 2d 599, 601 (1987), *aff'd*, 321 N.C. 589, 364 S.E. 2d 139 (1988); N.C.G.S. Sec. 160A-50(g) (1987). On appeal from the superior court to this court, the findings of fact made by the trial court "are binding on the appellate court if supported by competent evidence, even if there is evidence to the contrary; conclusions of law drawn from the findings of fact are, however, reviewable *de novo.*" *Id.*

---

The petitioners' assignments of error raise the issue of whether the trial court erred in concluding the Town had substantially complied with N.C.G.S. Secs. 160A-47 and 48. Thus, the issues presented for review are: I) whether the annexation of the three subareas was in compliance with N.C.G.S. Sec. 160A-48(c); II) whether the Town failed to provide for the extension of water and sewer service as required by N.C.G.S. Sec. 160A-47(3)(b); and III) assuming the Town's compliance with Section 160A-48(c) and Section 160A-47(3)(b), whether the annexation of petitioners' property complied with Section 160A-48(d).

I

The Town in the process of adopting the questioned annexation ordinance qualified, pursuant to N.C.G.S. Sec. 160A-48(c), three distinct non-contiguous subareas as property "developed for urban purposes." N.C.G.S. Sec. 160A-48, which governs annexation by cities of 5,000 or more, provides in pertinent part as follows:

(a) A municipal governing board may extend the municipal corporate limits to include any area

(1) Which meets the general standards of subsection (b), and

(2) Every part of which meets the requirements of either subsection (c) or subsection (d).

(b) The total area to be annexed must meet the following standards:

(1) It must be adjacent or contiguous to the municipality's boundaries at the time the annexation proceeding is begun.

(2) At least one-eighth of the aggregate external boundaries of the area must coincide with the municipal boundary.

(3) No part of the area shall be included within the boundary of another incorporated municipality.

(c) Part or all of the area to be annexed must be developed for urban purposes. An area developed for urban purposes is defined as any area which meets any one of the following standards:

(1) Has a total resident population equal to at least two persons for each acre of land included within its boundaries; or

(2) Has a total resident population equal to at least one person for each acre of land included within its boundaries, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage consists of lots and tracts five acres or less in size and such that at least sixty-five percent (65%) of the total number of lots and tracts are one acre or less in size; or

(3) Is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts five acres or less in size.

[1] In the process of qualifying the three distinct non-contiguous subareas as property "developed for urban purposes," the Town did not use the same qualifying standard for each subarea. Instead, each subarea was determined to be "developed for urban purposes" by the use of a different standard, either (c)(1), (c)(2) or (c)(3) of N.C.G.S. Sec. 160A-48. The trial court concluded this procedure "substantially complied with the requirements of N.C.G.S. Sec. 160A-48" and the petitioners had failed to show "any irregularity in the proceedings which would materially prejudice the substantive rights of the petitioners." The petitioners contend the conclusions of the trial court were in error in that the Town was obligated to qualify the three subareas "as a whole" and that any attempt to qualify subareas separately is inconsistent with the statute. Accepting petitioners' argument would have required the Town to

qualify *all* three subareas under *either* (c)(1), (c)(2) or (c)(3) of N.C.G.S. Sec. 160A-48. We reject petitioners' argument.

Our Supreme Court has held that "[c]ities with 5,000 or more people may annex an outlying urban area pursuant to G.S. 160A-48(c) and the intervening undeveloped lands pursuant to G.S. 160A-48(d) so long as the entire area meets the requirements of G.S. 160A-48(b)." *In re Annexation Ordinance*, 300 N.C. 337, 341, 266 S.E. 2d 661, 663 (1980). The petitioners make no argument that the entire annexed area does not meet the requirements of Section 160A-48(b). Their contentions here relate only to N.C.G.S. Sec. 160A-48(c).

Our Supreme Court has set forth the following principles of annexation:

> The urban area that a city seeks to qualify for annexation under one of the urban purposes tests set forth in G.S. 160A-48(c)(1)-(3) must be considered as a whole; i.e., as one area and may not be divided into sub-areas or study areas. This requirement, however, does not preclude annexation of intervening undeveloped land pursuant to G.S. 160A-48(d).

*Id.* at 342, 266 S.E. 2d at 664.

These principles set forth by our Supreme Court are not read by this court to require that *every* non-contiguous subarea a municipality seeks to qualify as urban property be qualified under the *same* urban purpose test. Instead, *each* such subarea must be considered as a whole and must qualify under *one* of the urban purposes tests set forth in Section 160A-48(c). In this case the trial court found as a fact that the Town "studied and qualified each urban subarea . . . as a whole" and that each subarea met the standards of one of the urban purposes tests set forth in N.C.G.S. Sec. 160A-48(c). Accordingly, the trial court did not err in concluding the Town complied with N.C.G.S. Sec. 160A-48(c) in annexing three non-contiguous subareas using different standards for qualifying each of the three subareas as urban property.

II

[2] The petitioners next contend the Town did not comply with N.C.G.S. Sec. 160A-47(3)(b) in that in order to obtain water they were required to install a twelve-inch water line at their own expense which they contend is a major trunk water main.

N.C.G.S. Sec. 160A-47 requires a municipality to prepare a report prior to the annexation public hearing, setting forth the plans for the extension of water and sewer service to the annexed area. The report must include:

> (3) A statement setting forth the plans of the municipality for extending to the area to be annexed each major municipal service performed within the municipality at the time of annexation. Specifically, such plans shall:
>
> . . . .
>
> > b. Provide for extension of major trunk water mains and sewer outfall lines into the area to be annexed so that when such lines are constructed, property owners in the area to be annexed will be able to secure public water and sewer service, according to the policies in effect in such municipality for extending water and sewer lines to individual lots or subdivisions . . . .

N.C.G.S. Sec. 160A-47.

The purpose of the statute is to insure that major municipal services are provided to newly annexed areas on a nondiscriminatory basis. *In re Annexation Ordinance*, 304 N.C. at 554, 284 S.E. 2d at 474. The trial court found that water and sewer service within the annexed area and the pre-existing municipal limits was provided by the Orange Water and Sewer Authority (OWASA), *see* N.C.G.S. Sec. 162A-1 et seq. (authorizing water and sewer authorities), and that the policy regarding water and sewer extensions applied equally throughout the annexed area and the property within the pre-existing municipal limits. The trial court also found that the petitioners were required by OWASA policies "to pay the cost of water . . . extensions" to their property and were "entitled under OWASA's policies to reimbursements from OWASA when and if others tap onto the lines in the future."

The petitioners argue the twelve-inch water line they were required to install at their cost was a "major water main." The characterization of a water main as "major" "depends largely upon the size of the municipality or even the number of users within a particular subdivision." *In re Annexation Ordinance*, 303 N.C. 220, 225, 278 S.E. 2d 224, 228 (1981). The petitioners offered no evidence from which the trial court or this court could ascertain in this instance that the twelve-inch water extension was a "major

WALLACE v. TOWN OF CHAPEL HILL

[93 N.C. App. 422 (1989)]

water main." Furthermore, as the policy requiring these petitioners to pay for the cost of water line extensions to their property was consistent with the policy of water line extensions within the pre-existing municipal limits, the trial court was not in error in concluding the Town had "substantially complied with all the relevant provisions of N.C.G.S. 160A-47."

[3] We likewise reject any contentions of the petitioners that the Town failed to comply with Section 160A-47 in that OWASA, not the Town, provided the water and sewer services. Section 160A-47 requires the Town to provide in the annexed area "each major municipal service performed within the municipality at the time of annexation." N.C.G.S. Sec. 160A-47(3). The municipality may delegate responsibility for the providing of these services to others, such as OWASA. *Moody v. Town of Carrboro*, 301 N.C. 318, 328, 271 S.E. 2d 265, 272 (1980), *reh'g denied*, 301 N.C. 889, 274 S.E. 2d 230 (1981). However, the municipality is not "relieved of its primary duty" to comply with the statute. *In re Annexation Ordinance*, 255 N.C. 633, 646, 122 S.E. 2d 690, 700 (1961); *see also Cockrell v. City of Raleigh*, 306 N.C. 479, 486, 293 S.E. 2d 770, 775 (1982) (annexation report must contain a statement regarding extension of "major municipal service[s] performed within the municipality at the time of annexation . . . whether provided by the City work force, or . . . by an independent authority such as a countywide water-sewer authority"). If such services are not provided, the residents of the annexed area are entitled to a Writ of Mandamus requiring the municipality to live up to its commitments. N.C.G.S. Sec. 160A-49(h).

III

[4] Finally, the petitioners argue the Town was without authority to annex the non-urban property, which includes the petitioners' property. Specifically, the petitioners contend that N.C.G.S. Sec. 160A-48(d) requires all non-urban properties "constitute necessary land connections between the municipality and areas developed for urban purposes or between two or more areas developed for urban purposes." We reject this argument.

N.C.G.S. Sec. 160A-48(d) provides as follows:

(d) In addition to areas developed for urban purposes, a governing board may include in the area to be annexed any area which does not meet the requirements of subsection (c) if such area either:

(1) Lies between the municipal boundary and an area developed for urban purposes so that the area developed for urban purposes is either not adjacent to the municipal boundary or cannot be served by the municipality without extending services and/or water and/or sewer lines through such sparsely developed area; or

(2) Is adjacent, on at least sixty percent (60%) of its external boundary, to any combination of the municipal boundary and the boundary of an area or areas developed for urban purposes as defined in subsection (c).

The purpose of this subsection is to permit municipal governing boards to extend corporate limits to include all nearby areas developed for urban purposes and where necessary to include areas which at the time of annexation are not yet developed for urban purposes but which constitute necessary land connections between the municipality and areas developed for urban purposes or between two or more areas developed for urban purposes.

In *Southern Glove Mfg. Co. v. City of Newton*, 75 N.C. App. 574, 578, 331 S.E. 2d 180, 183, *disc. rev. denied*, 314 N.C. 669, 336 S.E. 2d 401 (1985), this court held that a municipality may annex non-urban property if such area meets the criteria set forth in (d)(1) or (d)(2). It is not necessary for the municipality to additionally show that the non-urban area constitutes a necessary land connection "between the municipality and areas developed for urban purposes." *Id.*

The Town presented evidence that the non-urban property met the criteria of (d)(2) in that the non-urban property was adjacent on at least sixty percent of its external boundary to a combination of the Town's boundary and the boundary of the area developed for urban purposes. The petitioners offered no evidence to the contrary and the trial court entered a finding consistent with this evidence, to which finding the petitioners did not except. This finding is sufficient to support the trial court's conclusion that the defendant had "substantially complied with the requirements of N.C.G.S. Sec. 160A-48(d)."

Affirmed.

Judges PHILLIPS and COZORT concur.